ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3701
    Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 4:22-CR-00437-JST |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: October 18, 2024 |
| ROBERT D. TAUNTON, | Time: 9:30 a.m. |
| Defendant. | Judge: Hon. Jon S. Tigar |

U.S. SENTENCING MEMO.
Case No. 4:22-CR-00437-JST

**CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

A.     Offense Conduct ................................................................................................................1

     1.     Distribution of CSAM on Kik..................................................................................2

     2.     Solicitation of CSAM on Instagram ........................................................................2

     3.     Residential Search and Arrest ..................................................................................3

B.     Procedural History .............................................................................................................4

DISCUSSION ..................................................................................................................................4

A.     Sentencing Guidelines Calculation ....................................................................................4

B.     The Government Recommends 84 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors .................................................................................................................5

C.     The Government Seeks Restitution in the Amount of $33,000 .........................................9

CONCLUSION ..............................................................................................................................12

# AUTHORITIES

Page(s)

## CASES

*Gall v. United States*,
    552 U.S. 38 (2007) .................................................................................................................. 5

*Paroline v. United States*,
    572 U.S. 434 (2014) ......................................................................................................... 5, 6, 9

*Rita v. United States*,
    551 U.S. 338 (2007) .................................................................................................................. 5

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) (*en banc*) .................................................................................. 5

*United States v. Delacruz*,
    2024 WL 3498240 (N.D. Cal. July 18, 2024) ....................................................................... 11

*United States v. Laney*,
    189 F.3d 954 (9th Cir. 1999) ................................................................................................. 9

*United States v. Marigny*,
    2020 WL 4260622 (N.D. Cal. July 24, 2020) ......................................................................... 5

*United States v. Waknine*,
    543 F.3d 546 (9th Cir. 2008) ................................................................................................. 9

## STATUTES

18 U.S.C. § 2252 ............................................................................................................... 1, 4, 9

18 U.S.C. § 2259 ............................................................................................................. 9, 10, 12

18 U.S.C. § 2259A ..................................................................................................................... 1

18 U.S.C. § 3013 .................................................................................................................. 1, 12

18 U.S.C. § 3014 .................................................................................................................. 1, 12

18 U.S.C. § 3553 ............................................................................................................. 5, 8, 12

# INTRODUCTION

On February 16, 2024, Robert Daniel Taunton pleaded guilty to both charges of a two-count indictment: Count One, Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b) and Count Two, Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Between fall 2020 and fall 2022, Taunton downloaded, distributed, and solicited explicit images of children—some prepubescent—through the social media platforms Kik and Instagram. *See* Presentence Investigation Report ("PSR") ¶ 6. Taunton also posed as a teenager on Instagram to solicit explicit photos and videos from 42 minors between the ages of 13 and 16 years old. PSR ¶¶ 6, 14. By consuming, distributing, and soliciting child pornography, Taunton has contributed to the ongoing trauma of the children whose abuse is depicted in these images. Therefore, the government respectfully requests the Court impose a term of **84 months** of imprisonment on Counts One and Two, to be served concurrently, to be followed by 5 years of supervised release, a $200 special assessment under 18 U.S.C. § 3013, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture of Taunton's electronic devices containing child pornography, and restitution in the amount of $33,000 to specific victims listed below.

# BACKGROUND

**A. Offense Conduct**

Taunton used his Kik account to distribute sexually explicit images of minor boys through the group "Boy Shot." PSR ¶¶ 8–10, 12. Taunton also posed as a teenager on Instagram to solicit explicit photos and videos from 42 minors between the ages of 13 and 16 years old. PSR ¶¶ 6, 13–17. In September 2021, the FBI searched Taunton's residence and seized his phone, which contained 578 explicit images of minors and 62 videos of child pornography. PSR ¶¶ 18, 21. When the FBI returned to arrest Taunton in December 2022, agents discovered a new cell phone containing additional child pornography. PSR ¶ 23. Altogether, Taunton possessed over 600 images and videos of child pornography that included images and videos from 33 series of identified and known child pornography victims. PSR ¶¶ 25, 27.

### 1. Distribution of CSAM on Kik

During the week of October 19, 2020, an undercover FBI agent observed a Kik group chat named "Boy Shot." PSR ¶ 8. Members of "Boy Shot" used the group to exchange images and videos of child sexual abuse material (CSAM). *Id*. Robert Taunton, under the username "spaceprogram2199," was both a member and administrator of "Boy Shot," and was also a member in 58 other Kik groups (including groups with names such as: "13+ Commando boys," "Boys in Birthday Suits," "NawtyBois," "Gay Ped Hub," "Gay 13-21 Unclean," and "Wicked Boners"). PSR ¶¶ 8–10, 12.

Taunton, using the "spaceprogram2199" account, distributed multiple pictures and videos of child pornography in the "Boy Shot" group. PSR ¶¶ 7–10. For example, Taunton posted a photo of a nude adolescent male exposing his buttocks while facing away from the camera, as well as an eight second video, that appeared to be on a loop, of an adolescent male ejaculating. PSR ¶ 10. On October 25, 2020, Taunton distributed an image of an adolescent male under the age of 15 years old displaying an erect penis. PSR ¶ 8. On October 26, 2020, he distributed a video of an adolescent male under the age of 13 years old ejaculating, serving as the factual basis of Count One. *Id*. In November 2020, Taunton also distributed CSAM of an under 15-year-old boy via Kik. PSR ¶ 9.

In April 2021, an undercover FBI agent engaged in a private chat with Taunton on Kik. PSR ¶ 11. The agent asked Taunton if he preferred little boys or little girls, to which Taunton responded, "I like both. But I like boys more." When asked "what ages," Taunton replied, "10+." *Id*. Indeed, while Taunton preyed mainly on young boys, the FBI later uncovered explicit material on Taunton's phone of minors of both genders, including prepubescent children. PSR ¶ 25.

### 2. Solicitation of CSAM on Instagram

Taunton did not stop at viewing and distributing child pornography. Through two Instagram accounts Taunton posed as a teenager (16 or 19 years old) and encouraged young boys to self-produce photos and videos of themselves engaged in sexually explicit acts. PSR ¶¶ 13–17. In total, Taunton communicated via Instagram with 519 unique user accounts, and successfully groomed 42 minor children into exchanging sexually explicit material with him. PSR ¶¶ 14–15. Some of the minors spoke Spanish or German; Taunton went so far as to use translation apps to communicate with them. PSR ¶ 15. To begin with, Taunton established a relationship with some of the minors by discussing

seemingly innocuous topics such as pets, television, and gaming. PSR ¶ 15. To gain their trust, he flattered children who reported insecurities about their physique and comforted children scared to report their homosexuality to family or friends. *Id*. Taunton then shifted the conversation to what the boys were wearing, stating he had recently showered or was lying in bed nude, or he would ask how large a boy's penis was to start conversations about nudity and masturbation. *Id*. Taunton shared images of his own penis or of himself masturbating and asked the boys to do the same in return. *Id*. While Taunton posed as someone close in age to the young boys he chatted with—claiming on his profiles to be either 16 years old or 19 years old—in reality, he was in his 30s at the time. PSR ¶ 14.

In summarizing its analysis of Taunton's Instagram chat messages, the FBI detailed seven specific victims—between 13 to 16 years old—who Taunton pressured until they provided explicit images and videos of themselves. PSR ¶ 16; *see also* US-001587–99. These included minors providing images of their penis or masturbating. *Id*. Taunton prompted one minor to go into the school bathroom and take a picture of his erect penis. *Id*. In addition, he ignored a 13-year-old victim stating he had been sexually exploited by his parents since he was 11, and Taunton pressured yet another 13-year-old victim to send a picture of his penis after the boy told Taunton that he had not done so with anyone else. *Id*.

Taunton not only used his Instagram accounts to solicit sexual content from minors, but he also used Instagram to trade child pornography and to attempt to obtain child pornography, including from adults who claimed to be sexually exploiting children. PSR ¶ 17. One person from Australia who Taunton communicated with described raping his 13-year-old stepbrother. *Id*. Rather than expressing concern, Taunton expressed interest in obtaining CSAM from those activities. *Id*.

### 3. Residential Search and Arrest

On September 16, 2021, the FBI executed a search warrant of Taunton's residence and seized Taunton's cell phone and other electronic devices. PSR ¶ 18. Forensic review revealed that Taunton possessed child pornography on these devices, serving as the factual basis for Count Two. PSR ¶ 21. The content of the photos and videos recovered by the FBI are disturbing. In one video—nearly 10 minutes in length—is titled "13yo boy fucked by man" with the content of the video matching the title. The seized hard drive contained approximately 20 videos depicting CSAM of children and teenagers engaged in oral and genital sex. PSR ¶ 22.

Nonetheless, when FBI agents returned to arrest Taunton in December 2022, Taunton had obtained a new cellphone that once again contained child pornography. PSR ¶¶ 23, 25.

In total, Taunton possessed 578 images and 62 videos of child pornography. PSR ¶ 25. Of those files, 61 images and 18 video files were identified and linked to known series of child pornography traded on the internet. PSR ¶ 27.

### B. Procedural History

On November 17, 2022, a federal grand jury returned a two-count indictment charging Taunton with one count of Distribution of Child Pornography (in violation of 18 U.S.C. § 2252(a)(2) and (b)) and one count of Possession of Child Pornography (in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2)). PSR ¶ 1. On February 16, 2024, Taunton pleaded guilty to both counts via a written plea agreement. PSR ¶ 2. Sentencing is currently scheduled before this Court on October 18, 2024. *Id.*

## DISCUSSION

### A. Sentencing Guidelines Calculation

As set forth in the Plea Agreement and the Presentencing Report, PSR ¶¶ 55–74, the Sentencing Guidelines calculation for Taunton's offense level is as follows:

| | |
|---|---|
| **BASE OFFENSE LEVEL** (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **Offense involved possession of material with minors under 12 years old** (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| **Offense involved knowing distribution** (U.S.S.G. § 2G2.2(b)(3)(F)) | +2 |
| **Offense involved use of computer** (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| **Offense involved 600 or more images** (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| | |
| **Total Adjusted Offense Level** | **30** |
| **Criminal History Category** | **I** |
| **Guidelines Range** | **97 – 121 months** |

The government agrees with the Guidelines calculation and Criminal History Category provided by Probation. This is Taunton's first conviction.

### B. The Government Recommends 84 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter the defendant and others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). "[T]he Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

Taunton repeatedly downloaded, distributed, and solicited child pornography over social media platforms across multiple years. Taunton's crimes contributed to the sexual exploitation of minors, a serious offense that will continue to affect his victims for the rest of their lives. Balancing the seriousness of Taunton's conduct against his severe health condition and lack of prior criminal history, the government respectfully recommends a sentence of **84 months' imprisonment**, below the applicable Guidelines range.

The Supreme Court has acknowledged that child pornography "produces concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457–58 (2014); *see also* PSR ¶¶ 31–40. Furthermore, as Congress has recognized, "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *United States v. Marigny*, No. 20-MJ-70755-MAG-BLF, 2020 WL 4260622, at *3 (N.D. Cal. July 24, 2020) (citing Child Pornography

Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996)). Indeed, "[i]t is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline*, 572 U.S. at 457. Defendants who possess child pornography "play[ ] a part in sustaining and aggravating this tragedy." *Id.* For many victims, given that "child pornography is now traded with ease on the Internet," knowledge of wide circulation "renew[s] the victim's trauma and ma[kes] it difficult for her to recover from her abuse." *Id.* at 439–41. "In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 457.

Simply put, the gravity of the nature and circumstances of Taunton's offense conduct cannot be downplayed. Real children were harmed. Indeed, Taunton did not stop at seeking out sexually explicit content of minors on the internet—he also distributed child pornography on Kik and pressured underage minors he communicated with via Instagram to share sexually explicit images of themselves with him. PSR ¶¶ 8, 14–16. When some minors were reluctant to send Taunton photos of themselves, Taunton pressured them by telling them he loved them and coached them on how to masturbate in order to encourage them to produce explicit images of themselves. US-001588. A few of the minors Taunton communicated with over Instagram told him that they were being sexually abused by other adults in their lives. PSR ¶ 16. Rather than taking any action to help these children, Taunton continued to exploit them for his own pleasure. *Id*. In addition to communicating directly with underage minors, Taunton also used Instagram to communicate with other pedophiles who claimed they were actively sexually exploiting children. PSR ¶ 17. Taunton expressed interest in obtaining CSAM from their activities, which included incest and rape. *Id*.

Taunton's conduct continued over the course of years. The FBI first began investigating Taunton in fall 2020, and he was eventually arrested in November 2022. PSR ¶¶ 6–25. Throughout that period, Taunton consistently consumed, distributed, and solicited sexually explicit images and videos of children. *Id*. Even when he was put on notice by an FBI search of his home and seizure of his electronics containing child pornography in September 2021, Taunton did not stop. PSR ¶¶ 6, 18–23. Rather, he bought a new phone and downloaded additional CSAM, which the FBI discovered when they returned to arrest him over a year later. *Id*.

All of this adds up to a pattern of troublesome behavior. Taunton preyed on children, mostly young boys, some of whom were prepubescent and some of whom were being otherwise exploited and abused. The mandatory minimum sentence of 60 months is simply not sufficient to convey the severity of Taunton's conduct. Rather, the nature and circumstances of the crimes involved weighs towards imposing a Guidelines sentence.

On the other hand, mitigating against imposing a Guidelines sentence, the government acknowledges and sympathizes with Taunton's difficult childhood and seemingly severe medical condition. The trauma Taunton describes from his own background, as described in the PSR, and the severity of his health condition as conveyed to the government, militates in favor of some leniency. PSR ¶¶ 78–80, 83–85. Balancing Taunton's mitigating factors against the seriousness of his conduct and the need to deter both Taunton specifically and generally those who wish to traffic or possess child sexual abuse material, the government recommends a below-Guidelines sentence of 84 months.

The dual needs of protecting the public and encouraging adequate deterrence also militate in favor of the government's recommended sentence. The sexual exploitation of minors has devastating and long-lasting effects, and protecting children from online predation is of utmost importance to the government. Whether he intentionally caused this harm or not, Taunton's possession, distribution, and solicitation of a large amount of child pornography proliferated the abuse of many victims in this case, as detailed in their victim impact statements and summarized by Probation in the PSR. *See* PSR ¶¶ 35–48 (quoting from victim impact statements). The government's recommended sentence would signal to potential offenders that offenses involving the viewing, distribution, and solicitation of child pornography are not tolerated. Additionally, a 84-month sentence would illustrate to minors who are being exploited by online predators that the criminal justice system will take steps to protect them. And it would signal to survivors of such exploitation that the criminal justice system takes their concerns about the continued distribution of explicit material depicting their abuse seriously.

Furthermore, there is an aspect of specific deterrence at play here, as well. Taunton's conduct was not a one-time mistake. He engaged in this conduct over the course of multiple years. PSR ¶ 6. Even after his phone and hard drive were seized by the FBI for containing child pornography—and Taunton was on notice that his conduct was illegal and reprehensible—he continued to seek out child

pornography. *Id*. Taunton went so far as to buy a new phone and download additional explicit images of underage minors. PSR ¶¶ 6, 23.

In addition to distributing and possessing CSAM, Taunton interacted directly with minors and those who traffic in CSAM through Instagram. PSR ¶¶ 13–17. In total, Taunton communicated via Instagram with 519 unique user accounts, and successfully groomed 42 minor children into exchanging sexually explicit material with him. *Id.* Taunton used translation services, flattery, and messages of purported love and caring to encourage young boys to produce CSAM of themselves. *Id.* Yet, Taunton ignored claims from these minor children of abuse at the hands of parents, encouraged them to film themselves even while at school, and pressured at least one child who said he had never shared pictures of his genitalia with anyone else. *Id.* While Taunton posed as someone close in age to the young boys he chatted with—claiming on his profiles to be either 16 years old or 19 years old—in reality, he was in his 30s at the time. PSR ¶ 14. Taunton did not stop at soliciting images from 13-year-old boys directly. Taunton connected with other adults who take pleasure in sexually exploiting children, including engaging in a conversation with an individual from Australia who communicated that he had raped his 13-year-old stepbrother. PSR ¶ 17. Rather than expressing concern, Taunton expressed interest in obtaining CSAM from those activities. *Id*. Indeed, while Taunton possessed 578 images and 62 videos of child pornography on his devices, only 61 images and 18 video files were identified from known series of previously identified CSAM victims. PSR ¶¶ 25, 27.

Although Taunton has accepted responsibility, there is no indication that he will stop seeking out, distributing, and soliciting child pornography of his own accord. Left to his own devices, it is possible that Taunton will seek out more victims in the future. 60 months is simply insufficient to protect the public, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" under 18 U.S.C. § 3553(a)(2)(A). A prison term closer to the Guidelines range would account for specific and general deterrence goals while also accommodating the mitigating health and background factors that Taunton has provided. *See* 18 U.S.C. § 3553(a). In sum, the government recommends that **84 months of imprisonment** would be sufficient, but not greater than necessary, to reflect the sentencing goals outlined in 18 U.S.C. § 3553(a).

**C. The Government Seeks Restitution in the Amount of $33,000**

Restitution for victims of child pornography offenses is mandatory under 18 U.S.C. § 2259. Victims are statutorily entitled to restitution under the provisions of the Mandatory Victim Restitution Act of 1996, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the AVAA), and the Mandatory Restitution for Sexual Exploitation of Children Act of 1994. Specifically, in child pornography trafficking cases—which is defined to include offenses under 18 U.S.C. § 2252, as Taunton has pleaded to here—the Court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the defendant's crime, and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2); *see also Paroline*, 572 U.S. at 457–62. Restitution in child pornography cases serves "twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 457. In short, § 2259 "is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999). To the extent there is a dispute about the correct amount of restitution, it is the government's burden to demonstrate the amount of the loss to the victim by a preponderance of the evidence. *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e)).

The United States has received restitution requests from counsel for certain victims in known series, and hereby respectfully requests that the Court order Taunton to pay restitution in the total amount of **$33,000**, apportioned to each victim as described in the chart below, and according to the payment plan provided in the PSR. *See* PSR ¶¶ 28–48, 112–114, recommendation pg. 1.

The ongoing viewing and distribution of child pornography depicting these individuals being sexually abused and exploited continues to affect them in profoundly negative ways, as described by their counsel in submissions filed concurrently under seal with this sentencing memorandum. While restitution will not erase the trauma these children have experienced, this money can help them obtain the resources they need to begin to heal.

1    For example, Taunton had at least two images and one "thumb file" that involved victims of the "8Kids" series. The eight young boys victimized in this series of images were sexually abused at the hands of a caretaker and, according to their now-foster mother, the series of images include oral rape, anal rape, masturbation, urination, sexual pleasure from feces, and even brother with brother. PSR ¶ 35. The foster mother's victim impact statements asserts that "the healing process will never be complete" and "[t]hese pornographic images will always han[g] over my children's heads and follow them through life like a dark cloud" as long as some "deranged pervert posts and reposts these graphic images of our sons[.]" *Id.* Several of the victims directly confirmed their continued suffering: "Each victim notification envelope represents a confirmation that those images of my suffering are still being viewed." PSR ¶ 37; *see* PSR ¶¶ 36–39. These victims are requesting $5,000 in restitution. PSR ¶ 29.

    Taunton had at least one video from the "Jenny" series, who informs the Court that she was molested and filmed between the ages of seven to nine years old. PSR ¶ 42. This victim is seeking $3,000, PSR ¶ 30, which is the statutory minimum, 18 U.S.C. § 2259(b)(2).

    Taunton had at least two images from the "SurferHair" series, which involved a victim who is still currently a minor. PSR ¶ 41. The victim is "unable to have a healthy childhood because of the photos of him still in circulation[,]" is "explosively angry[,]" and "reluctant to trust others[.]" *Id.* His mother reported that he feels shame, embarrassment, humiliation, and anger knowing that images of his abuse are being viewed by pedophiles. *Id.* This victim is requesting $5,000 in restitution. PSR ¶ 31.

    Taunton had at least one image and four videos from the "Tara" series, who was nine years old and younger when she was abused, and who reports being stalked as recently as 2019 by pedophiles who recognize her from online CSAM. PSR ¶ 44. The victim reports: "Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood." *Id.* This victim is requesting $10,000 in restitution. PSR ¶ 32.

    Taunton had at least two videos from the "Vicky" series, who was filmed being raped by an adult male when she was only ten years old. PSR ¶ 47. The victim explained that, while she is now an adult, she lives "everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life taking grotesque pleasure in them" and "are trading and sharing videos of me as a little girl being raped in the most sadistic ways[.]" PSR ¶ 45. The victim explained, "I still have

U.S. SENTENCING MEMO.              10
Case No. 4:22-CR-00437-JST

nightmares that come from knowing that pictures of me are spread around the internet by people with perverted interests in my pain. I have panic attacks and flashbacks" and pleads with the Court that "dealing with the effects of the stress of random men looking at pictures of my sex abuse as a child is like a full-time job that wears me down and colors every aspect of my life." *Id.* This victim is requesting $10,000 in restitution. PSR ¶ 33; *see United States v. Delacruz*, No. 5:23-CR-00312-EJD-1, 2024 WL 3498240, at *2 (N.D. Cal. July 18, 2024) (awarding same victim $5,000).

In sum, the consumption and distribution of child pornography is far from a victimless crime. As the victims have stated, the ongoing circulation of CSAM in which they are pictured means that it is impossible for them to heal from their trauma. Taunton contributed to their suffering by not only downloading and viewing child pornography but also distributing it to other pedophiles. Accordingly, the government, on behalf of these victims, seeks $33,000 in restitution from Taunton, apportioned as follows:

| **Victim Series** | **Restitution Amount** |
|---|---|
| 8Kids | $5,000 |
| Jenny | $3,000 |
| SurferHair | $5,000 |
| Tara | $10,000 |
| Vicky | $10,000 |
| **Total** | **$33,000** |

//
//
//
//
//
//
//

# CONCLUSION

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Defendant Robert D. Taunton to a sentence of **84 months of imprisonment** on Counts One and Two, to be served concurrently, to be followed by 5 years of supervised release (with the conditions recommended by the U.S. Probation Office), a $200 special assessment under 18 U.S.C. § 3013, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture of Taunton's electronic devices containing child pornography as detailed in the plea agreement, and restitution in the amount of $33,000, according to the payment plan suggested in the PSR.

DATED: October 4, 2024                                            /s/ Kelly I. Volkar
                                                                  KELLY I. VOLKAR
                                                                  Assistant United States Attorney